2022 IL App (1st) 210223-U

FIRST DISTRICT,
FIRST DIVISION
January 31, 2022

No. 1-21-0223

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| 2612 W. BARRY, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | No. 19 M1 714296 |
| JAMES NUTER d/b/a American Vintage | ) | |
| Reclamation, | ) | Honorable |
| | ) | James A. Wright, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: In eviction action, summary judgment for plaintiff was inappropriate where material issues of fact existed as to validity of defendant's alleged lease for the property.

¶ 2     Plaintiff 2612 W. Barry, LLC, filed an eviction action against defendant James Nuter, alleging that in January 2019, defendant recorded against the property a fake lease on which he had forged the signature of the property's then-owner. The trial court granted summary judgment to plaintiff, and defendant now appeals. For the reasons that follow, we reverse.

¶ 3                                   BACKGROUND

¶ 4          Prior to June 25, 2019, James Anstett was the owner of commercial property located at 2612 West Barry Avenue in Chicago, Illinois (the property). Defendant leased a portion of the property from which he operated American Vintage Reclamation, LLC (AVR), a Wisconsin limited liability company of which defendant is the manager and sole member. Defendant had written leases for his portion of the property (1) from June 10, 2015 to June 10, 2017 for $1450 a month (the 2015 lease) and (2) from June 10, 2017 to June 9, 2019 for $1600 a month (the 2017 lease).[1]

¶ 5          On January 4, 2019, defendant recorded a memorandum of lease for the property which bore his signature only. Attached to the memorandum was a lease agreement (the 2018 lease) between "the individual/entity *** know[n] as James Nuter, American Vintage Reclamation LLC" (as tenant) and James Anstett (as landlord). It purported to give defendant a lease from June 10, 2018 to June 9, 2019 for $2200 a month, with defendant having the option to renew the lease through June 2025, and it bore the apparent signatures of defendant, James Anstett, and his son Kurt Anstett.

¶ 6          On June 25, 2019, James Anstett conveyed the property to plaintiff via warranty deed. In conjunction with the sale, he executed an affidavit (the Anstett affidavit) stating:

             "2. On or around June, 2018, the undersigned entered into an oral, month to month lease for a portion of the Property with [defendant] with a monthly rent of $2,200 ('Oral Lease').

             3. [Defendant], without the undersigned's knowledge or consent, recorded against the property a purported Memorandum of Lease dated January 4, 2019 ***.

---

[1] Prior to trial, the trial court granted defendant's motion *in limine* to bar evidence that the 2015 and 2017 leases did not exist.

4. The Memorandum, signed only by [defendant], has attached to it a document purported to be a lease for the Property and allegedly signed by the undersigned and Kurt Anstett, as lessor ('Forged Lease').

5. Kurt Anstett is not the owner of the property and has no authority whatsoever to bind the Property or the undersigned to any lease.

6. The signature on the Forged Lease is not my signature and is a forgery.

7. This Affidavit is given to Chicago Title Insurance Company as an inducement to waive exception I on title and release the Memorandum as invalid."

¶ 7 On June 30, 2019, plaintiff mailed to defendant a 30-day notice of termination directing him to vacate the premises by August 31, 2019. Defendant did not vacate, and on September 4, 2019, plaintiff filed an action for forcible entry and detainer, alleging that defendant had no right to the premises and plaintiff was entitled to immediate possession.

¶ 8 On January 2, 2020, defendant filed his answer and raised the following affirmative defenses: (1) In signing the 2018 lease, Kurt acted as James' agent and had actual and/or apparent authority to lease the premises to defendant. (2) Defendant fully performed all his obligations under the 2018 lease and exercised his option to renew in a timely fashion. (3) Under the 2018 lease, AVR, not defendant, was the lessor of the property and "must be named as the proper defendant in this lawsuit." (4) Defendant held equitable title to the property and plaintiff lacked standing to evict him. (5) Plaintiff did not provide the requisite 30-day notice of termination. Defendant acknowledged that plaintiff mailed its notice on July 30, 2019, but alleged that Kurt signed for the mail and he did not "discover[]" it until August 5.

¶ 9 On January 10, 2020, the trial court entered an order permitting limited discovery only: plaintiff could depose defendant, defendant could depose James and Kurt Anstett, and both sides

could retain a handwriting expert and issue requests for production. Defendant filed a motion to reconsider, arguing that he was entitled to full written discovery because he wanted to call multiple other fact witnesses, including Kari McCloskey and Rita Anstett, who witnessed the signing of the 2018 lease; Earl Johnson, who considered purchasing the property in 2018 but "back[ed] out" upon learning that defendant had a written lease for the property; and Rick May, an employee of Kurt who was aware of the existence of the 2018 lease. Following a hearing, the court denied defendant's motion, stating that "this is meant to be a summary proceeding" and that its discovery ruling would not preclude defendant from calling fact witnesses at trial.

¶ 10        Following James Anstett's death in January 2020, defendant filed a motion *in limine* to bar the Anstett affidavit as hearsay. Plaintiff argued that the affidavit was admissible under Illinois Rule of Evidence 803(15) (eff. Sept. 28, 2018) as "a document purporting to establish or affect an interest in property." The trial court denied defendant's motion.

¶ 11        On December 8, 2020, plaintiff moved for summary judgment, arguing that there was no issue of material fact as to the genuineness of the 2018 lease. In support, plaintiff attached the Anstett affidavit and an affidavit from Warren Spencer, a handwriting expert. Spencer averred that he was a Certified Fraud Examiner and a Certified Forensic Document Examiner and had been trained to determine whether handwriting samples were genuine. Having compared the signature on the 2018 lease with "known signatures" of James Anstett, including those on his affidavit, checks, and various real estate documents, he opined to a reasonable degree of professional certainty that the signature on the 2018 lease "is not James Anstett's signature and is not genuine."

¶ 12        Defendant filed a response in which he argued that there was a material issue of fact as to the genuineness of the lease based on his own affidavit, in which he stated:

"7. I personally sat at James Anstett's house and witnessed him sign the [2018] Lease. Kurt Anstett was also at the house and signed the Lease in my presence.

8. The Lease is valid and enforceable and contains the signature of myself, James Anstett, and Kurt Anstett. All of which were executed at the same time and place." Defendant further averred that he had never forged a lease for the property and that he had exercised his option to extend the lease through 2025.

¶ 13     Defendant also attached the affidavit of Diane Marsh, a handwriting expert, who stated that she was a Board Certified Document Examiner and had examined the 2018 lease as well as 56 documents containing James Anstett's signature. Based on her training and professional experience, she opined to a reasonable degree of professional certainty that it was "highly probable" that James Anstett's signature on the 2018 lease was genuine.

¶ 14     On January 13, 2021, following argument by the parties, the trial court granted plaintiff's summary judgment motion, stating: "If there is a disagreement between what the experts are saying, it's like X out each other. You've got an expert. They've got an expert." Additionally, "if you eliminate the experts," defendant's only evidence in support of the 2018 lease was his own affidavit, which was "clearly self-serving." Thus, relying on the Anstett affidavit, the court found the 2018 lease was a forgery and entered an order of possession in favor of plaintiff.

¶ 15     Defendant filed a motion to reconsider in which he raised new arguments that he had been "reserving for trial." He argued that the Anstett affidavit should be stricken for failure to comply with Supreme Court Rule 191(a) and that plaintiff had failed to refute his affirmative defenses, particularly his allegations that Kurt acted as James' agent in signing the 2018 lease and that AVR was a necessary party to the litigation. The trial court denied defendant's motion to reconsider on February 24, 2021.

¶ 16                                          ANALYSIS

¶ 17          Defendant argues that (1) the trial court abused its discretion by not permitting him to

conduct full discovery; (2) the Anstett affidavit was inadmissible hearsay and failed to comply

with Rule 191(a); (3) summary judgment was inappropriate because material issues of fact

existed as to the genuineness of the 2018 Lease; and (4) the trial court erred in ruling that

American Vintage Reclamation, LLC, was not a necessary party.

¶ 18                                          Discovery

¶ 19          Defendant argues that the trial court erred by not permitting him to conduct full

discovery. "Control of the discovery process is vested in the discretion of the circuit court."

*Industrial Coatings Group, Inc. v. American Motorist Insurance Co.*, 276 Ill. App. 3d 799, 813

(1995). A discovery order will not be modified on appeal without an affirmative showing that the

order prevents ascertainment of the truth or substantially affects crucial issues in the case. *Id.*

¶ 20          The trial court's limited discovery order allowed plaintiff to depose defendant, defendant

to depose James and Kurt Anstett, and both sides to retain a handwriting expert and issue

requests for production. Defendant asserts that this was improper due to the "complexity" of the

case but does not indicate what additional discovery he might have taken or how it might have

materially impacted the case. He cites two factual allegations which he claims necessitated full

discovery: First, in September 2018, Kurt allegedly requested a copy of the 2018 lease from

defendant. Second, in December 2018, defendant and James were allegedly engaged in

negotiations for defendant to purchase the property, and their correspondence included copies of

the 2018 lease. However, the trial court permitted defendant to depose both James and Kurt.

Defendant did not depose James during his lifetime, nor did he depose Kurt at any time, and he

does not explain how full discovery might have enabled him to substantiate these two allegations. Thus, we do not find the trial court's order to be an abuse of discretion.

¶ 21                              Admissibility of the Anstett Affidavit

¶ 22    Defendant argues that the Anstett affidavit was inadmissible hearsay. Because its admissibility is a legal issue not involving factfinding or assessing the credibility of witnesses, our review is *de novo*. *People v. Risper*, 2015 IL App (1st) 130993, ¶ 33.

¶ 23    Hearsay is an out-of-court statement, other than one made by a testifying declarant, offered to prove the truth of the matter asserted (Ill. R. Evid. 801(c) (eff. Oct. 15, 2015)) and is generally inadmissible unless an exception to the rule against hearsay exists (Ill. R. Evid. 802 (eff. Jan. 1, 2011)). The trial court found the Anstett affidavit admissible under Illinois Rule of Evidence 803(15) (eff. Sept. 28, 2018), which provides an exception for:

> "(15) Statements in Documents Affecting an Interest in Property. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document."

¶ 24    The Anstett affidavit meets these criteria. James Anstett authored the affidavit in conjunction with the sale of the property "as an inducement [for the title company] to waive exception I on title and release the Memorandum as invalid." His allegation that his signature on the 2018 lease was forged was clearly relevant to the affidavit's purpose.

¶ 25    Defendant argues that Rule 803(15) applies only to "dispositive documents" such as formal title documents, mortgages, or liens. We disagree. On its face, the rule contains no such requirement but applies to documents "purporting to establish *or affect* an interest in property."

(Emphasis added.) Ill. R. Evid. 803(15) (eff. Sept. 28, 2018). In interpreting the federal analog of Rule 803(15), the court in *United States v. Weinstock*, 863 F. Supp. 1529, 1532 (D. Utah 1994), explained that "[e]stablish is used in the rule separately from affect" and that "[m]atters allied to interests in real or personal property, that relate to the property may affect an interest in it but not be dispositive."

¶ 26     Defendant relies on 30B Wright & Miller, Federal Practice & Procedure § 6923 (2017 ed.), which urges against an "overly casual" interpretation of Rule 803(15) because documents that "merely assert an interest in property" do not bear the same indicia of reliability as dispositive documents. The treatise authors express concern that an overly broad interpretation of the rule could allow admission of documents "such as a handwritten postcard to the effect that, 'your property belongs to me; sincerely, The Usurper.' " *Id.* Unlike an anonymous postcard, the Anstett affidavit does not merely purport to *assert* an interest in property; it is a sworn and notarized statement attempting to *affect* that interest by inducing the title company to waive a title exception in conjunction with the sale of the property. The trial court correctly found it admissible under Rule 803(15).

¶ 27     Defendant also argues that the Anstett affidavit should have been stricken for failure to comply with Rule 191(a), which provides that affidavits submitted in support of a summary judgment motion "shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 336 (2002) (strict compliance with Rule 191(a) is necessary "to insure that trial judges are presented with valid evidentiary facts upon which to base a decision" (internal quotation marks omitted)).

¶ 28       Defendant forfeited this argument by raising it for the first time in his motion to reconsider summary judgment. The purpose of a motion for reconsideration is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's application of the law. *Caywood v. Gossett*, 382 Ill. App. 3d 124, 133 (2008). Trial courts "should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." (Internal quotation marks omitted.) *Id.* at 133-34. Thus, arguments raised for the first time in a motion for reconsideration are forfeited on appeal. *Id.* at 134. Defendant's only explanation for why he did not earlier challenge the Anstett affidavit's compliance with Rule 191(a) was that he was "reserving [the argument] for trial." Accordingly, we will honor defendant's forfeiture of this issue.

¶ 29                      Summary Judgment

¶ 30       We review the trial court's grant of summary judgment *de novo* (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)), keeping in mind that summary judgment is only appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2018). We construe the record strictly against the movant and liberally in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. To avoid summary judgment, the nonmoving party must present evidence that would arguably entitle him to prevail at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010).

¶ 31       Here, defendant presented evidence that, construed liberally in his favor, creates a material issue of fact as to the validity of the 2018 lease: (1) the lease itself, bearing the apparent signature of James Anstett; (2) the opinion of his handwriting expert Marsh that it was "highly

probable" that James' signature on the 2018 lease was genuine; and (3) defendant's statement in his affidavit that he personally witnessed James signing the lease.

¶ 32     Plaintiff argues that Marsh's opinion is entitled to no weight because she "merely provided an unsupported opinion about a probability." We disagree. In her affidavit, Marsh set forth the basis for her opinion: she examined 56 documents containing known signatures of James Anstett and "conducted both a visual and microscopic examination" to determine his handwriting characteristics. Based on that examination, she opined to a reasonable degree of scientific certainty that it was "highly probable" that James' signature on the 2018 lease was genuine. Although an expert may not base her opinion on speculation and conjecture (*Garland v. Sybaris Clubs Int'l, Inc.*, 2019 IL App (1st) 180682, ¶ 38), she may frame her opinion in terms of probability, as long as the opinion is based on a reasonable degree of scientific or professional certainty. *Baird v. Adeli*, 214 Ill. App. 3d 47, 65 (1991).

¶ 33     In rendering summary judgment, the trial court stated that "[i]f there is a disagreement between what the experts are saying, it's like X out each other. You've got an expert. They've got an expert." The court then proceeded to "eliminate the experts" in considering the propriety of summary judgment. But at the summary judgment stage, it is not appropriate to weigh expert opinions against each other; a disagreement between experts reflects a material issue of fact that must be resolved at trial. See *Kleiss v. Bozdech*, 349 Ill. App. 3d 336, 351 (2004) (in summary judgment proceeding, trial court erred by weighing the relative merits of expert opinions; court should only have considered whether the experts would be qualified to testify at trial).

¶ 34     Plaintiff further argues that defendant's affidavit was properly disregarded for being "self-serving," citing the proposition that "[u]nsupported assertions, opinions, and self-serving or conclusory statements do not comply with Rule 191(a)." *Jones v. Dettro*, 308 Ill. App. 3d 494,

499 (1999); see also *Madden v. Paschen*, 395 Ill. App. 3d 362, 388 (2009). Plaintiff implies that any affidavit by a party that furthers the party's own interests is *ipso facto* barred as "self-serving." Rule 191(a) contains no such prohibition; rather, it requires that affidavits on a motion for summary judgment "shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). Thus, courts have consistently disregarded self-serving averments if they are unsupported and/or conclusory (see, *e.g.*, *Nat'l Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶¶ 2, 68-69 (defendant's "self-serving conclusory affidavit" was insufficient to create a genuine issue of material fact since it was unsupported and inconsistent with defendant's actions in prior proceeding); *Hagar v. State Farm Fire & Casualty Co.*, 154 Ill. App. 3d 689, 692 (1987) ("bald statement" in affidavit that a sum of money was due was "too conclusionary" to be considered in ruling on summary judgment motion); *Madden*, 395 Ill. App. 3d at 388 (trial court properly struck portions of affidavit that contained legal conclusions and factual assertions without foundation)), but not solely for advancing the affiant's interests.[2]

¶ 35 Here, defendant stated in his affidavit that he "personally sat in James Anstett's house and witnessed him sign the [2018] Lease." This is an allegation of fact within defendant's personal knowledge to which he could presumably testify at trial under Rule 191(a). Defendant's affidavit also contained the legal conclusion that "[t]he [2018] lease is valid and enforceable," which the trial court properly disregarded.

---

[2] We note in passing that defendant's affidavit was no more "self-serving" than the Anstett affidavit, since, by his own admission, James Anstett authored the affidavit in an attempt to induce the title company to waive a title exception and release the memorandum of lease as invalid.

¶ 36    In sum, defendant's affidavit and the affidavit of his handwriting expert create a material issue of fact as to the validity of the 2018 lease, thus rendering summary judgment inappropriate. See *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2021 IL App (1st) 191937, ¶ 30 ("if the record reveals a dispute as to any material issue of fact, summary judgment must be denied regardless of the lower court's belief that the movants will or should prevail at trial").

¶ 37    American Vintage Reclamation, LLC, as a Necessary Party

¶ 38    Finally, defendant argues that the trial court erred by not adding American Vintage Reclamation, LLC (AVR), as a necessary party to the litigation.

¶ 39    Initially, plaintiff argues that defendant waived this issue because he withdrew his motion to add AVR as a necessary party, as reflected in the court's order of November 24, 2020. Subsequently, during the February 24, 2021 hearing on defendant's motion to reconsider, defendant's counsel clarified that he withdrew his motion only because the trial court had already ruled on the matter. The trial court acknowledged and reaffirmed its ruling for two reasons: First, although AVR was a registered Wisconsin LLC for all relevant times, it was only registered in Illinois after the filing of the lawsuit. Second, defendant was the sole member of the LLC. Under these circumstances, we shall address this issue on the merits.

¶ 40    An entity is a necessary party when it has an interest in the subject matter of the litigation that may be materially affected by a judgment entered in its absence. *Howerton v. Prudential Insurance Co. of America*, 2012 IL App (1st) 110154, ¶ 35. " 'The relevant inquiry is not whether the court's judgment has in fact materially affected the absent individual's interests in the subject matter in controversy. Instead, it is whether the absent person might claim a substantial and present interest which determines that the person is a necessary and indispensable party.' " *Id.* (quoting *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 281 (1988)). Due

process requires all necessary parties to be joined to an action, and an order entered without jurisdiction over a necessary party is void. *Sheppard*, 124 Ill. 2d at 281.

¶ 41    The 2018 lease states that the lease agreement "is between Lessor under the individual/entity (hereinafter know as the 'Landlord') known as James Anstett and the Lessee under the individual/entity (hereinafter referred to as the 'Tenant' know as James Nuter, American Vintage Reclamation LLC." [*sic*] Notably, defendant and AVR are referred to as a singular "individual/entity" who is the property's "[t]enant." Moreover, defendant signs the lease (as "Tenant," again in the singular) in his personal capacity with no indication that he is also signing on behalf of AVR as an independent legal entity. Based on the language of the contract, we agree with the trial court that AVR is not a necessary party to the litigation.

¶ 42                                CONCLUSION

¶ 43    For the foregoing reasons, we reverse summary judgment in favor of plaintiff and remand for further proceedings.

¶ 44    Reversed and remanded.