ATTORNEY FOR APPELLANT

Michael W. Reed

Warsaw, Indiana      

ATTORNEYS FOR APPELLEE

Pamela Carter

Attorney General of Indiana

Randi F. Elfenbaum

Deputy Attorney General

Indianapolis, Indiana    

IN THE

SUPREME COURT OF INDIANA

RANDY G. STAHL,                 )

    )

Appellant (Defendant below), ) Indiana Supreme Court

) Cause No. 43S03-9709-CR-511

v. )

 ) Indiana Court of Appeals

STATE OF INDIANA,     ) Cause No. 43A03-9604-CR-136

)

Appellee (Plaintiff below). )

)

­

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT

The Honorable Robert Burner, Judge

Cause No. 43D01-9506-CF-140

­

ON PETITION TO TRANSFER

BOEHM, Justice.

Defendant Randy Stahl was convicted of defrauding a financial institution (a bank) and theft.  Both crimes turned on unauthorized withdrawals from an account owned by another.  Stahl contends that the trial court erred in admitting a crucial piece of evidence, an affidavit supplied to the bank by the account owner to prove Stahl was unauthorized, under the exceptions to the hearsay rule for business records and for documents affecting an interest in property.  The Court of Appeals affirmed.  
Stahl v. State
, 675 N.E.2d 1130 (Ind. Ct. App. 1997).  Stahl requests either acquittal or a new trial.  We grant transfer and remand because the document was inadmissible hearsay.

Factual and Procedural Background

In June of 1995, a friend of Stahl’s, Vince Johnson, had a checking account with Mutual Federal Savings Bank.  The account could be accessed through an automatic teller machine (“ATM”) with a card and a four digit personal identification number (“PIN”).  After receiving notification of several overdrafts, on June 14 Johnson called Glenda Thomas, the bank’s branch manager to “inquire as to the nature of the overdraft.”  After meeting with Johnson, Thomas investigated his account and discovered that on June 10 Johnson had reported his card as missing and the bank had placed a hold on his account.  She also found two ATM withdrawals of $100 and $50 and three attempted ATM withdrawals of $50, $20, and $10, all made on June 9 one after the other.  Johnson had told her he did not make these withdrawals.  Later, Thomas viewed the bank’s videotape of ATM transactions and verified that Johnson was not the person at the ATM at the time of the withdrawals.  At a June 15 meeting, Thomas told Johnson of the videotape and said that before he could view the tape, or be reimbursed, the bank required him to complete an “affidavit of forgery.”  Johnson completed the affidavit which asserted that he did not (1) withdraw the funds; (2) authorize their withdrawal; or (3) benefit from their withdrawal.  Johnson then viewed the tape and identified the individual who withdrew the money as his friend Randy Stahl.  The Bank reimbursed Johnson $100 (the amount of withdrawals less $50) and refunded him $60 in overdraft charges.

Stahl was charged with fraud on a financial institution and theft.  Johnson did not testify at the trial, but the affidavit furnished to the bank was admitted to prove Stahl’s lack of authorization to use the card.  A jury found Stahl guilty on both counts and the trial judge sentenced him to concurrent prison terms of six years and one and a half years respectively.  Stahl appealed and the Court of Appeals affirmed.  
Stahl
, 675 N.E. 2d at 1130.

On appeal, Stahl asserts that it was reversible error to admit Johnson’s affidavit.
(footnote: 1)  Because the document was admitted to establish the truth of the matters recited, it is concededly hearsay.  The State argues that the document falls within two exceptions to the hearsay rule: business records, Indiana Evidence Rule 803(6); and statements in documents affecting an interest in property, Rule 803(15).  Our standard of review of a trial court’s findings as to the essential elements of admissibility is sometimes described as an abuse of discretion.  
Mullins v. State
, 646 N.E.2d 40, 51 (Ind. 1995); 
Daum v. State
, 625 N.E.2d 1296, 1297 (Ind. Ct. App. 1993).  Because the predicates or foundational requirements to admissibility often require factual determinations by the trial court, these findings are entitled to the same deference on appeal as any other factual finding, whether that is described as a “clearly erroneous” or abuse of discretion standard.  However, the ultimate question in this case is the interpretation of the language of a rule of evidence that presents a question of law for this Court.

I. Business Records

The business records exception to the hearsay rule permits admission of records of regularly conducted business activity provided that certain requirements are met.  Prior to the adoption of the Indiana Rules of Evidence a business record in this state, as in most jurisdictions, was admissible if it was: (1) an original record; (2) made in the regular course of business at or near the time of the events recorded; (3) that reported facts within the first hand knowledge of someone who had a duty to observe and report the facts.  
Holmes v.  State
, 671 N.E.2d 841, 858 (Ind. 1996), 
reh’g
 
denied
, 
petition
 
for
 
cert.
 
filed
 (U.S. June 16, 1997) (No. 96-9438); 
Cobb v. State
, 585 N.E.2d 40, 43 (Ind. Ct. App. 1992).  Rule 803(6) now formulates the business records exception as available for a “record . . . of events . . . made at or near the time . . . by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business . . . and if it was the regular practice [to make the report].”  Ind.Evidence Rule 803(6).  Stahl argues that the affidavit was improperly admitted because Johnson did not have a duty to observe and report the facts.  The State argues that the requirements were met because Thomas had a duty and the facts were within the personal knowledge of Johnson, who was her source.

Business records doctrine before the enactment of Rule 803(6) clearly demanded that both the recorder and the person with personal knowledge be under a duty to observe and report the facts.
(footnote: 2)  The rule itself is less clear on this point as a matter of syntax.  However, the commentary to Federal Rule of Evidence 803(6), which is identical to the Indiana Rule, notes the same requirement under various predecessors of the Federal Rules and unequivocally states that “the Rule follows this lead by requiring an informant with knowledge acting in the course of the regularly conducted activity.”  
Fed. R. Evid.
 803(6) advisory committee’s note.  Indiana courts applying Indiana Rule 803(6) have held that the person who records the information in the regular course of business must also have personal knowledge of the information recorded in order to make it reliable.  
D.W.S. v. L.D.S.
, 654 N.E.2d 1170, 1173 (Ind. Ct. App. 1995) (the event recorded must have been within the personal knowledge of someone acting in the course of regularly conducted business activity).  Federal courts reach the same result.
(footnote: 3)
 This requirement is fully consistent with the purpose of the exception.  The hearsay rule is designed to forbid unreliable out of court statements offered to prove the truth of the matter asserted.  The business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy.  The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.  None of these is present in the case of a report that simply accepts information from a source that is not itself acting in the course of a regular activity.  This case illustrates the point.  The bank required Thomas to obtain the affidavit from Johnson before it would reimburse him or allow him to watch the videotape.  Thomas had the duty to report information, but she had no personal knowledge, apart from what Johnson told her, as to whether Johnson authorized or benefitted from the ATM transactions.  She merely reported what Johnson said in the affidavit, without any basis for evaluating the truth of the matter asserted.  The affidavit might be admissible to show, for example, the timing of Johnson’s report to Thomas, but it is hearsay as to the facts reported.  In short, because Thomas did not have personal knowledge of the information in the affidavit, and Johnson was not acting in any regularly conducted business activity, the requirements of Rule 803(6) were not met.

II. Documents Affecting an Interest in Property

The State contends the document was admissible under Indiana Evidence Rule 803(15):

Statements in Documents Affecting an Interest in Property
.  A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purposes of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

The Indiana Rule is identical to the Federal Rule
.  There are no reported Indiana cases dealing with this exception and federal case law is sparse.  
See
, 
e.g.
, 
United States v. Weinstock
, 863 F. Supp. 1529 (D. Utah 1994); 
Taylor v. United States
, 1993 WL 597379 (D. Ariz. Sept. 27, 1993); 
Compton v. Davis Oil Co.
, 607 F. Supp. 1221 (D. Wyo. 1985).  The Advisory Committee’s Note to Federal Rule of Evidence 803(15) anticipated that the exception would typically apply to “ancient” and “dispositive” documents that contain recitals of fact.  For example, “a deed may recite that the grantors are all the heirs of the last record owner.”  This was viewed as admissible under 803(15) because “[t]he circumstances under which dispositive documents are executed and the requirement that the recital be germane to the purpose of the document are believed to be adequate guarantees of trustworthiness . . . .”  As with any exception to the hearsay rule, the ultimate issue is whether the evidence in question is reliable.  Each specific exception to the rule contains requirements designed to ensure the trustworthiness of the evidence.  A piece of evidence that may be argued to fit within the specific language of the rule may nonetheless be inadmissible hearsay because of its inherent unreliability.  
Idaho v. Wright
, 497 U.S. 805, 814-15, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990); 
Dutton v. Evans
, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970) (plurality opinion) (to satisfy the Confrontation Clause, when unavailability of declarant is not proved, hearsay statements are analyzed on a case-by-case basis to see whether there are indicia of reliability); 5 
Weinstein’s Federal Evidence
 § 802.05[4][a] (2d ed. 1997).  Reliability is an implicit requirement of Rule 803(15).  
Weinstock
, 863 F. Supp at 1535 (the circumstances of an affidavit’s execution supported the conclusion that the declarations therein were trustworthy); 
Botsford General Hosp. v. Citizens Ins. Co.
, 489 N.W.2d 137 (Mich. Ct. App. 1992) (handwritten sales receipt was not made under circumstances that promoted its reliability and was inadmissible under 803(15));
 5 Weinstein’s Federal Evidence 
§ 803.20[1] (the 803(15) exception is available only if several indicia of trustworthiness are shown).

Under Rule 803(15) some documents, usually dispositive ones (e.g., deeds, bills of sale, etc.), are regarded as inherently reliable.  If a document actually constitutes the instrument of transfer, as in the case of a deed, the statements recited in the document are likely to be reliable because the instrument is carefully drawn and was not created for purposes of the current controversy.  They typically have the added assurance that they are negotiated documents where at least one party, usually the purchaser, is strongly motivated to see that they are accurate and a misrepresentation may generate adverse consequences to the other.

This exception to the hearsay rule is in part based on necessity.  5 
Weinstein’s Federal Evidence 
§ 803(15)[1] (the rule is necessary because “litigation may arise so many years after a conveyance that declarants and witnesses to the transaction may be unavailable”).  Just as business records must be admitted because people recording vast numbers of events cannot be expected to testify to personal recollection of this minutiae, statements in dispositive documents are sometimes the only means of establishing facts that are not genuinely controverted.  By reason of passage of time and the importance of a well planned transaction at the time it was done, these documents are presumptively reliable.  However, the Rule has been held to apply to other documents affecting or establishing an interest in property, even if not dispositive in nature.  
See
, 
e.g.
, 
Weinstock
, 863 F. Supp at 1529 (an affidavit claiming ownership of 35,000 shares of stock, filed after the stock certificate was “lost,” was admitted under Federal Rule of Evidence 803(15) to show that the defendant, who allegedly forged an endorsement on the certificate, never had an ownership interest in the stock or the certificate).  

The parameters of the phrase “establish or affect an interest in property” are not entirely clear.  The phrase could certainly be confined to documents that directly “establish” (deeds) or “affect” (liens) interests in property.  In some broader sense anything relating to a commercial transaction may be argued to  “affect an interest in property.”  It is debatable whether the affidavit in issue in this case should be described as one affecting an interest in property.   By asserting that the ATM withdrawals were unauthorized, Johnson in some sense affected an interest in money owed to him by the bank by causing the bank to reimburse most of this money.  The affidavit in this respect is of the same qualitative character as the shareholder affidavit held admissible in 
Weinstock
.  However, any document to be admitted under this exception must still be executed in circumstances that generate confidence in its reliability.  For non-dispositive documents, this burden is steeper.  And the more recent its creation, the more carefully the document’s reliability must be examined.  Because the circumstances under which this affidavit was given do not establish sufficient indicia of truthfulness, it does not qualify under the 803(15) exception to the hearsay rule. The affidavit in this case bears none of the indicia of reliability that Rule 803(15) assumes.  It is neither ancient nor dispositive.  More importantly, the document was created in conjunction with the very transaction giving rise to the lawsuit in which it is offered.  And, as explained below, there are a variety of circumstances under which there may be a motive to supply an incorrect affidavit of this type.  

III. Harmless Error

We conclude that the affidavit was not admissible under either Indiana Evidence Rule 803(6) or 803(15).  Nor was the error inconsequential.  Stahl’s story in a nutshell is that he and Johnson were smoking marijuana and Johnson gave him the card to permit him to get funds as a loan from Johnson.  Johnson, according to Stahl, either forgot or reneged on this arrangement.  That is one view.  We also see cases where the holder of a card conspires with the user to make withdrawals, report them as unauthorized, and split the proceeds of what amounts to a fraud on the bank.  Either of these views of the facts would explain how Stahl gained access to the PIN for the account, a question not addressed by any party to this appeal and apparently unexplained by the State’s version.  In short, there are far too many questions unresolved on this record to deem the error harmless.  The affidavit was a critical piece of evidence, indeed the only evidence showing that Stahl’s use of the ATM card was unauthorized.  Cross-examination as to this critical fact is plainly needed.  Indeed,  Johnson’s appearance before the trier of fact, and the requirement that the defendant be permitted to cross-examine Johnson’s version, is highlighted beyond question.

IV. Sufficiency of the Evidence

Because of the improperly admitted affidavit, Stahl requests either an acquittal or a new trial.  Under 
Everroad v. State
, 590 N.E.2d 567, 571 (Ind. 1992), if all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.  
See
 
also
 
Lockhart v. Nelson
, 488 U.S. 33, 34, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988) (a defendant who succeeds in having a conviction set aside because of trial error may be retried for the same offense without violating the Double Jeopardy Clause of the U.S. Constitution); 
Perkins v. State
, 542 N.E.2d 549, 551 (Ind. 1989).  If the evidence is insufficient, we reverse the convictions and the defendant cannot be retried.  
Vest v. State
, 621 N.E.2d 1094, 1096-97 (Ind. 1993).

If the jury believed the statements asserted in the affidavit, there was sufficient evidence to convict Stahl.  In the affidavit, Johnson said he did not authorize or benefit from the use of his ATM.  If believed, this statement definitively establishes that the money was stolen.  This, combined with videotape and corresponding bank records positively identifying Stahl as the person who withdrew the funds from Johnson’s account, was sufficient evidence to convict.  Thus, the evidence, including the erroneously admitted affidavit, was sufficient to support the jury verdict.

Conclusion

We grant transfer and remand for a new trial or other proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and SELBY, JJ., concur.

FOOTNOTES
1: Stahl also contends that admitting the affidavit deprived him of his ability to cross-examine Johnson in violation of his Indiana Constitutional right to confront witnesses.  Because we hold that the affidavit was inadmissible hearsay, we do not discuss Stahl’s constitutional claim.

2: It is of course permissible for one witness with knowledge of the procedures of an organization to testify as to the record keeping processes.  
Boarman v. State
, 509 N.E.2d 177, 181 (Ind. 1987) (“[t]he sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it.  The sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so, and who had personal knowledge of the transaction represented at the time of entry.”) (citation omitted); 
United States v. Dominguez
, 835 F.2d 694, 698 (7th Cir. 1987) (witness need only be someone with knowledge of procedure governing creation and maintenance of type of record sought to be admitted).

3: As summarized in 5 
Weinstein’s Federal Evidence
 § 803.11[4] (2d ed. 1997), the essential link of participation in a regularly conducted activity “is sometimes broken because the supplier of the data is not acting within the course of a regular business.  Often, the person is a ‘volunteer’ offering information to persons conducting an inquiry or investigation.  The person to whom the information is offered cannot qualify as the initial person in the chain because he or she does not have personal knowledge of the underlying event.” (citing cases).