

I N  T H E

# Indiana Supreme Court

FILED

Oct 15 2020, 12:57 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 20S-JT-63

## In the Matter of the Termination of the Parent-Child Relationship of K.R., J.T.R, J.L.R., & E.R. (Minor Children); A.B. (Mother) and J.R. (Father),

*Appellants/Respondents,*

—v—

## Indiana Department of Child Services,

*Appellee/Petitioner.*

Argued: May 21, 2020 | Decided: October 15, 2020

Appeal from the Steuben Circuit Court
No. 76C01-18070-JT-234 through -237
The Honorable Allen Wheat, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-JT-487

**Opinion by Justice David**

Justices Massa, Slaughter, and Goff concur.
Chief Justice Rush concurs in result.

**David, Justice.**

In this termination of parental rights case, parents appealed the trial court's decision to admit drug test reports alleging that these reports did not fit the records of a regularly conducted activity exception pursuant to Indiana Evidence Rule 803(6).  For the reasons discussed herein, we affirm the trial court finding these reports do meet the exception.

## Facts and Procedural History

Mother, A.B., and Father, J.R., are the parents of four children who were determined to be children in need of services (CHINS) and removed from their home because of the parents' inability to provide safe, sustainable housing free from domestic violence.  The Indiana Department of Child Services (DCS) eventually filed a petition to terminate the parents' parental rights because parents failed to complete court ordered services, failed to provide stable housing for the children and struggled with both domestic violence and drug addiction.

A termination hearing was held in January 2019.  During this hearing, the trial court admitted drug test results from Forensic Fluids Laboratory for both parents over their objections.  DCS admitted the evidence through the telephonic testimony of the Forensic Fluids Laboratories Director, Bridgette Lemberg, who had also signed an affidavit certifying the results as business records.

Other evidence presented regarding Mother's drug use included Mother's admission that she used drugs as well testimony from service providers that she did not complete all substance abuse treatment or services as ordered in the CHINS case.  Similarly, Father testified about his lifelong drug use, admitting he still smoked marijuana but stated he did not think he had a problem.  There was also evidence that he did not complete all services ordered in the CHINS case.

After hearing evidence about parents' drug use, failure to complete services, criminal histories, failure to maintain stable housing and regarding the best interests of the children, the court terminated both

parents' rights. Parents appealed arguing that the trial court abused its discretion in admitting their drug test results into evidence and that there was insufficient evidence to support the terminations. Our Court of Appeals affirmed finding that the drug test results were properly admitted as records of a regularly conducted activity and that in any case, any error in their admission was harmless. *In re K.R.*, 133 N.E.3d 754, 762 (Ind. Ct. App. 2019). It further found the evidence was sufficient to support termination. *Id.* at 764-65. Parents petitioned for transfer which we granted. Ind. Appellate Rule 58(A).

## Standard of Review

Trial courts have broad discretion whether to admit or exclude evidence. *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019), *cert. denied*. Appellate courts generally review decisions to admit evidence for abuse of discretion. *See Zanders v. State*, 118 N.E.3d 736, 741 (Ind. 2019). "An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind. 2016) (quotation omitted).

## Discussion and Decision

At issue is whether the drug tests can properly fall under the records of a regularly conducted activity exception to the hearsay rule pursuant to Indiana Rule of Evidence 803(6).[1] Parents argue that they do not. The State argues that the matter should be decided on harmless error grounds

---

[1] The Indiana Rules of Evidence presently refer to this exception as the "Records of a Regularly Conducted Activity Exception." However, it is often still referred to as the "business records exception."

in light of the ample other evidence of parents' drug use and in support of termination of their parental rights.[2]

Our Court of Appeals panels have come to different conclusions about whether drug test reports fit the records of a regularly conducted activity. On the one hand, we have panels that have found that the lab does not depend on the records to conduct business, but rather the records are generated for the benefit of DCS and thus, the exception does not apply. *In re L.S.*, 125 N.E.3d 628, 634-35 (Ind. Ct. App. 2019), *trans. not sought*; *accord In re A.B.*, 130 N.E.3d 122, 128-29 (Ind. Ct. App. 2019) (reversing CHINS adjudication and citing *L.S.* for the proposition that "exhibits containing drug test results do not fall under the business records exception to the rule against hearsay"), *trans. not sought.* On the other, we have panels, including the present one, that found drug test records do fall within the exception. *In re K.R.*, 133 N.E.3d at 762; *Matter of De.B.*, 144 N.E.3d 763, 767 (Ind. Ct. App. 2020). We agree with our Court of Appeals panel below and with the panel in *Matter of De.B.* that the drug test records fall under the records of a regularly conducted business activity.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is not admissible unless it falls under certain exceptions. Ind. Evidence Rule 802. The records of a regularly conducted activity exception provides that a record of an act, event, condition, opinion, or diagnosis is admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

---

[2] Because of the recent decision in *In re L.S.*, 125 N.E.3d 628 (Ind. Ct. App. 2019), the State conceded in its brief that the records of a regularly conducted activity exception does not apply here.

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Ind. Evidence Rule 803(6).  Further, this Court has held that:

[t]he business records exception permits records of business activity to be admitted in circumstances when the recorded information will be trustworthy.  The reliability of business records stems from the fact that the organization depends on them to operate, from the sense that they are subject to review, audit, or internal checks, from the precision engendered by the repetition, and from the fact that the person furnishing the information has a duty to do it correctly.

*Stahl v. State*, 686 N.E.2d 89, 92 (Ind. 1997)*; See also, In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639, 642 (Ind. 2004).

Here, parents challenge the trustworthiness of the records.  They argue that pursuant to *Matter of L.S.*, 125 N.E.3d at 631, because the records are not necessary for the laboratory to operate, they do not qualify as records of a regularly conducted activity exception.  However, as the panel in *Matter of De.B.* aptly observed, there are two problems with this argument.

First, the laboratory *does* depend on the records to operate.  As Lemberg indicated in her affidavit, Forensic Fluids Laboratories, Inc. has a CLIA certification by the Federal Department of Health and Human Services. As such, it is required to keep drug test reports for two years to keep its certification.  *See* 42 C.F.R. § 493.1105(a)(6) (2003).  Further, we find the argument that the laboratory only creates the drug test reports for DCS and not for its own operations is not consistent with the practicalities of

using a laboratory that provides drug testing. That is, if any client, not just DCS submits a sample for drug testing to the laboratory, it is expected that results will follow or else it is not clear why someone would utilize the laboratory in the first place. It also seems to follow that such results would be provided in writing instead of, for example, via a phone call. Thus, it is clear that drug test reports are required for a laboratory that provides drug testing services to operate, both to keep necessary certifications and as a practical matter.

Second, there are other considerations impacting whether records are sufficiently reliable so as to meet the exception. In addition to whether the records are required for a business to operate, this Court previously noted other indicia of reliability. That is, the records at issue are subject to 1) review, audit, or internal check; 2) the precision engendered by the repetition; and 3) the fact that the person furnishing the information has a duty to do it correctly. *Stahl*, 686 N.E.2d at 92; *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d at 642; *see also* Advisory Committee's Note to Fed. R. of Evid. 803(6) (observing that business records are made reliable by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation"). Here, all of these additional indicia are met. Lemberg testified in detail about the internal laboratory process and quality control screening and further indicated that the laboratory does double blind testing almost monthly. Both her testimony and affidavit also reveal the detailed, methodical and repetitive process for processing samples. Finally, Ms. Lemberg is the Laboratory Director and Custodian of Records for Forensic Fluids and is licensed by the Michigan Department of Health and has a CLIA certification by the federal government. As such, she is required to follow all state and federal regulations in order to maintain her job and her company's licensure and certification. Because we find that the drug test records meet the trustworthiness indicia set forth in our prior case law, including that they are required for the ongoing business operations of Forensic Fluids, we hold the trial court did not err in admitting these records over parents' objections.

We acknowledge that Parents continue to argue that the tests are untrustworthy in other ways as well, citing issues with the test administration and the chain of custody. However, both sides presented evidence regarding these collection and chain of custody issues during trial, including testimony from the collectors and various persons involved in the chain of custody. The trial court assessed these witnesses' credibility. As such, we find that Parents are asking for this Court to reweigh evidence. Further, we note that "[DCS] need not establish a perfect chain of custody, and once [DCS] strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility." *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002). "To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with." *Id.* Here, parents do not present any such evidence of tampering.

## Conclusion

We affirm the trial court.


Massa, Slaughter, and Goff, JJ., concur.

Rush, C.J., concurs in result.

ATTORNEY FOR APPELLANT, A.B.

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEY FOR APPELLANT, J.R.

Kim Shoup
Angola, Indiana

Lisa Manning
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana